# CILENTI & COOPER, PLLC
ATTORNEYS AT LAW
200 Park Avenue – 17th Floor
New York, New York 10166
____
Telephone (212) 209-3933
Facsimile (212) 209-7102

June 10, 2022

**BY ECF**

Hon. Paul E. Davison, U.S.M.J.
United States District Court
Southern District of New York
300 Quarropas Street
White Plains, New York 10601

    Re: *Morgan v. Cravin Jamaican Cuisine Corp., et al.*
      <u>Case No. 21-CV-7510 (PED)</u>

Dear Judge Davison,

  We are counsel to the Plaintiff in the above-referenced matter, and jointly submit this letter with defense counsel seeking the Court's approval of the settlement agreement ("Agreement") reached between the parties. The Agreement is being submitted contemporaneously herewith, and the parties respectfully request that the Court approve the Agreement because it represents a fair resolution of this matter, negotiated at arm's length between experienced counsel.

##   *I.*  *The Need for the Court's Approval of the Agreement*

  As Plaintiff's action arises under the Fair Labor Standards Act, 29 U.S.C. §§ 201, *et seq.* ("FLSA"), the parties' settlement must be approved by this Court. *See Cheeks v. Freeport Pancake House, Inc.*, 796 F. 3d 199 (2d Cir. 2015). The FLSA expressly prohibits settlement of any right to unpaid minimum wages or overtime claims by employees made pursuant to 29 U.S.C. §§ 206-07, without the supervision of the Secretary of Labor. *See* 29 U.S.C. §216(c) (noting that a supervised settlement agreement "shall constitute a waiver by such employee of any right he may have [to pursue a private cause of action under FLSA"]). Courts have allowed an additional exception to the FLSA's restriction on settlement to include judicially supervised stipulated settlements. *See also D.A. Schulte, Inc., v. Gangi*, 328 U.S. 108, 113 n.8 (1946); *Lynn's Food Stores, Inc. v. United States ex. Rel. U.S. Dept. of Labor*, 679 F.2d 1350 (11th Cir. 1982); *see also Sampaio v. Boulder Rock Creek Developers, Inc.,* No. 07 Civ. 153, 2007 U.S. Dist. LEXIS 66013 (E.D.N.Y. Sept. 6, 2007).

## II. Nature of the Action

This is an action brought pursuant to the federal Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.* ("FLSA") and the New York State Labor Law §§ 190 *et seq.*, for the recovery of, *inter alia*, overtime compensation.

### a. The Defendants

Defendants Cravin Jamaican Cuisine, Corp. and Peter Murdock ("Mr. Murdock") (collectively, "Defendants") operate a small neighborhood food establishment located at 109 Main Street in Ossining, New York ("Cravin Jamaican"). Mr. Murdock is the owner of Cravin Jamaican.

### b. The Plaintiff

Plaintiff, Vivien Morgan, is a former employee of Cravin Jamaican, who was hired by the defendants in or about September 2018 to work as a cook. Plaintiff's employment ended on or about August 13, 2021. Plaintiff alleges that she worked an eight (8) hour shift Monday through Saturday from 7:00 a.m. until 3:00 p.m. (without a designated break), thereby working forty-eight (48) hours per week.[1]

According to Plaintiff, she was paid, in cash, on salary basis straight time for all hours worked throughout the entirety of her employment. According to Plaintiff, she was paid as follows:

- September 2018 – May 2021: $600 per week
- June 2021 – August 13, 2021: $640 per week

Plaintiff calculates her unpaid minimum wages and overtime compensation at approximately $34,000, with an equal amount in liquidated damages. Compensatory overtime compensation damages are calculated based on time and one-half plaintiff's straight time regular hourly rate, which is determined by dividing Plaintiff's gross wages by forty (40) hours. Together with statutory damages for the Defendants' alleged failure to provide wage notices and week wage statements, the total value of Plaintiff's claims amount to approximately $78,000, exclusive of attorneys' fees and interest.

## III. Facts Disputed by Defendants

Defendants dispute all of Plaintiff's claims. Plaintiff did not work six days per week from 7:00 a.m. to 3:00 p.m., every day. Plaintiff arrived each morning at approximately 7:20 a.m., and finished her cooking duties by 1:30 p.m. each day, after which Plaintiff stopped working for the day. Plaintiff worked at most six-and-a-half hours per day, which included one paid half-hour for lunch per day. Even in weeks in which Plaintiff worked six days, Plaintiff

---

[1] Plaintiff was not required to punch a time clock or other time-recording device at the start and end of her work shift.

worked at most 39 hours per week. Nevertheless, Defendants paid Plaintiff for 40 hours per week. During 2018, Defendants paid Plaintiff $600.00 in cash for approximately 40 hours per week, the equivalent of $15.00 per hour. From 2019 through 2021, Defendants paid Plaintiff $640.00 in cash per week for approximately 40 hours per week, or the equivalent of $16.00 per hour. From 2018 through 2021, the minimum wage rate in Westchester County was the following:

- 2018    $11.00 per hour
- 2019    $12.00 per hour
- 2020    $13.00 per hour
- 2021    $14.00 per hour

Finally, Defendants dispute Plaintiff's allegation that she was fired in retaliation for complaints about her pay. Defendants contend that Plaintiff was disruptive to the other workers at Cravin Jamaican. Defendants also contend that Plaintiff started a fight at Cravin Jamaican with Mr. Murdock's wife, which caused further consternation among the other employees. After Mr. Murdock gave Plaintiff the next day off with pay, Plaintiff simply never returned to work.

Thus, Defendants contend that Plaintiff simply did not work the number of weekly hours she claims, and did not work any overtime hours. Defendants paid Plaintiff on a weekly basis (at a rate above the minimum wage rate) for all hours she actually worked.

### IV.    The Settlement

As reflected in the attached Agreement, the parties agreed to settle Plaintiff's claims for a total of $40,000, with $20,000 to be paid within thirty (30) days of the Court's approval of the Agreement and dismissal of the action, and the remaining $20,000 to be paid over the following four (4) months.

### V.    The Agreement is Fair and Reasonable

The parties believe this settlement to be a fair resolution to this litigation, due to *bona fide* disputes about Plaintiff's claims. An FLSA settlement should receive judicial approval where it is "fair and reasonable." *See Wolinsky v. Scholastic, Inc.,* 900 F. Supp.2d 332, 335 (S.D.N.Y. 2012). In considering whether a settlement is fair and reasonable, the principal question is "whether the agreement reflects a reasonable compromise of disputed issues rather than a mere waiver of statutory rights brought about by an employer's overreaching." *Le v. SITA Info. Networking Computing USA, Inc.*, No. 07 Civ. 86, 2008 U.S. Dist. LEXIS 20786, at *2 (E.D.N.Y. Mar. 13, 2008) (*quoting Lynn's Food Stores v. United States*, 679 F.2d 1350, 1354 (11th Cir. 1982)); *see also In re Penthouse Executive Club Compensation Litig.,* No. 10 Civ. 1145, 2014 U.S. Dist. LEXIS 5864, at *22 (S.D.N.Y. Jan. 14, 2014) (noting that inherent adversarial nature of a litigated FLSA case is an adequate indicator of fairness of settlement).

Here, it is undisputed that this settlement did not result because of "overreaching" by the employer. To the contrary, the settlement was reached as a result of extensive arm's length

negotiations between counsel who are well versed in the prosecution and defense of wage and hour actions, as well as during mediation before experienced mediator Jess Bunshaft, Esq. Courts typically regard the adversarial nature of a litigated FLSA case to be an indicator of the fairness of the settlement. *See Aponte v. Comprehensive Health Management, Inc*., No. 10 Civ. 4825, 2013 U.S. Dist. LEXIS 47637 at *9 (S.D.N.Y. Arp. 13, 2013).

In light of the various disputes concerning Plaintiff's claims, as well the risk of ongoing litigation, this settlement should be approved. By settling now, Plaintiff receives a significant portion of her alleged unpaid wages even after attorneys' fees and costs are deducted, while enabling the parties to avoid the risks inherent in any trial. Based on our assessment of litigation risks, which we discussed thoroughly with Plaintiff during mediation, she made the decision to accept the Defendants' offer. It is respectfully submitted that, in view of the foregoing, this settlement is a reasonable compromise of disputed issues and should therefore be approved.

### VI. *Application for Attorneys' Fees*

Pursuant to this firm's retainer agreement with Plaintiff, our firm seeks retain one-third of the net proceeds of the settlement after expenses are deducted.[2] Therefore, Plaintiff's counsel seeks $13,138.68 in fees, plus $580 in costs, for a total fee application of $13,718.68.

Attorneys' fees in FLSA settlements are examined, to ensure that the interests of plaintiff's counsel in his own compensation did not adversely affect the extent of the relief counsel procured for the clients. *See Wolinsky v. Scholastic*, 900 F.Supp.2d 332, 336 (S.D.N.Y. 2012). In this case, Plaintiffs' counsel fee of one-third is reasonable. Of course, had the case proceeded, assuming Plaintiff prevailed, Plaintiff's counsel would have made a fee application for much more than the amount currently sought in fees.

While the Second Circuit's ruling in *Cheeks* did not outline the factors for approving a settlement, certain red-flag issues were identified, such as the inclusion of confidentiality provisions, general releases, and attorneys' contingency fees over in excess of 40%. *Id.* at 206. This Agreement contains no such red flags. Moreover, since the *Cheeks* decision, courts routinely hold that a contingency fee award is presumptively valid where, as here, the proposed fee amount is exactly one-third of the net settlement amount. *See Caceres v. Brentwood Farmers Market*, No. 20 Civ. 3476, 2021 U.S. Dist. LEXIS 147063, at *4-6 (E.D.N.Y. May 4, 2021); *Garcia v. Cloister Apt. Corp.*, 16 Civ. 5542, 2019 U.S. Dist. LEXIS 51887, at *9-10 (S.D.N.Y. Mar. 27, 2019). Here, Plaintiff agreed to a one-third contingency retainer agreement with counsel in connection with her wage-and-hour claims.

For all of the reasons set forth above, the parties respectfully request that the Court approve the Agreement and enter the proposed Stipulation and Order of Dismissal With Prejudice, which is being submitted simultaneously herewith, that expressly provides that the Court will retain jurisdiction over this matter solely for purposes of enforcing the Agreement.

---

[2] The firm's expenses total $580 for filing fees and service of process.

                                        Respectfully submitted,

                                        /s/_____
                                        Justin Cilenti

Enclosures

cc: Defense Counsel (by ECF)